541 So.2d 205 (1989)
MARTIN MILLS, INC., Plaintiff-Appellant,
v.
DEPARTMENT OF EMPLOYMENT SECURITY, et al., Defendants-Appellees.
No. 87-1168.
Court of Appeal of Louisiana, Third Circuit.
February 27, 1989.
Perret, Doise, Robert W. Daigle, Lafayette, for plaintiff-appellant.
Frank T. Scott, Jr., Baton Rouge, Stella Abotte, St. Martinville, for defendants-appellees.
Before GUIDRY, KNOLL, and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the plaintiff is disqualified from receiving unemployment compensation benefits because of misconduct connected with employment.
This is an unemployment compensation action appeal by Martin Mills, Inc. (hereinafter Martin) against the Louisiana Department of Employment Security (hereinafter the Agency) and Stella Abotte (hereinafter Abotte). Abotte worked for Martin as a sewing department examiner from July 8, 1980 until August 29, 1986. Abotte was discharged from employment by Martin for failure to properly perform her assigned work. Abotte subsequently filed a claim for unemployment compensation benefits. The Agency initially determined that there was no misconduct connected with Abotte's employment and found her eligible for unemployment compensation benefits. Martin appealed and the Appeal Referee affirmed the Agency's decision after an evidentiary hearing. Martin timely appealed the Appeal Referee's decision to the Board of Review which affirmed the decision of the Appeal Referee. Martin then appealed to the Sixteenth Judicial District Court and the trial court affirmed the decision of the Board of Review. A formal judgment was rendered and signed. Plaintiff timely filed a devolutive appeal. We reverse.

*206 FACTS
The defendant, Stella Abotte, was employed by plaintiff, Martin Mills, Inc., as a Sewing Department Examiner from July 8, 1980 until August 29, 1986. On August 29, 1986 she was discharged from her employment for failure to properly perform her assigned work. Following her discharge she applied for unemployment compensation benefits. The Agency initially determined that she was eligible to receive unemployment compensation benefits as her discharge from her employment was caused by her inability to meet her employer's requirements and that there was no misconduct connected with her employment. Plaintiff filed an appeal from this Agency decision and requested a hearing before an Appeal Referee. After an evidentiary hearing before an Appeal Referee, the initial Agency decision granting unemployment compensation benefits was affirmed. Plaintiff then appealed the decision to the Board of Review, which affirmed Abotte's qualification for benefits. Plaintiff subsequently appealed to the Sixteenth Judicial District Court and the trial court affirmed the Board of Review's decision. Plaintiff then appealed to this court assigning as error that the trial court erred in finding that Abotte was not disqualified for benefits as a matter of law.
After a hearing, which included the testimony of defendant, Stella Abotte, the Appeal Referee made the following findings of fact:
"The claimant [Stella Abotte] worked for Martin Mills, Incorporated from July 8, 1980, until August 29, 1986. She worked as a Sewing Department Examiner in the T-shirt Unit earning an hourly average of $5.48. The claimant normally worked from 7:00 a.m. to 3:45 p.m. Monday through Friday. On April 16, 1986, the claimant was suspended for one day without pay for poor quality work. On May 1, 1986, the claimant was conferenced and suspended for three days without pay for poor quality work. The claimant was retrained between April 29, 1986, and May 12, 1986, and shown exactly what she was doing wrong in the inspection process. The claimant was suspended without pay from May 24, 1986, to May 26, 1986, for poor quality work. On July 24, 1986, the claimant failed a quality inspection audit and was conferenced concerning the poor quality of her inspection work. The claimant was conferenced again on July 28, 1986, for poor quality work. When she failed the regrade inspection on July 29, 1986, the claimant was suspended for one day without pay. The claimant was regraded on August 4, 1986, and failed regrade, resulting in her being suspended without pay from August 5, 1986, to August 7, 1986. The claimant was retrained between August 11, 1986, and August 22, 1986, where she viewed a video tape of her working at her work station. She was critiqued and seemed to learn the acceptable way of inspecting T-shirts. By August 16, 1986, the claimant was graded a number of times and the quality of her work was acceptable. On August 25, 1986, the claimant was conferenced concerning too many defects being passed. On August 27, 1986, the claimant was once again conferenced for passing too many T-shirts with defects. The claimant was discharged on August 29, 1986, for continued poor quality inspections after warnings and suspensions. The claimant maintained that she performed her work to the best of her ability and contributed her errors to nervousness and working under constant pressure."
These findings of fact were adopted by the Board of Review. Based on these facts the Appeal Referee concluded that:
"The evidence and testimony presented show that the claimant was discharged from her employment for poor quality work. The claimant was conferenced on numerous occasions, suspended from work without pay and retrained and was still unable to meet the quality standards set by her employer. There was no evidence presented to show that the claimant was negligent in performing her job or that she did not attempt to perform her job to the best of her ability. The fact that the claimant worked under *207 pressure and became nervous when her work was inspected contributed to her poor quality work. The employer has failed to demonstrate that the claimant's discharge was for any willful misconduct connected with the employment. She is entitled to benefits."
Our review in this matter is confined to questions of law as the record in this case discloses sufficient evidence to support the findings of fact of the Board of Review and there is no issue of fraud presented. La. R.S. 23:1634; Ford v. Patin, Adm. of the La. Dept. of Employment Security, 534 So.2d 1003 (La.App. 3 Cir.1988); Dubois v. Louisiana Department of Labor, Office of Employment Security, 427 So.2d 645 (La. App. 5 Cir.1983), and cases cited therein. Therefore, the issue presented is whether, on the facts found by the Board of Review, and as a matter of law, Abotte was guilty of disqualifying misconduct.
LSA-R.S. 23:1601(2) provides that an employee shall be disqualified for unemployment compensation benefits, if he has been discharged by the employer for misconduct connected with his employment. Franklin v. Whitfield, 534 So.2d 98 (La.App. 3 Cir. 1988).
Louisiana courts have construed the definition of disqualifying misconduct as follows:
"An act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior which the employer has the right to expect of his employees; or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. Horns v. Brown, 243 La. 936, 148 So.2d 607 (1963)."
Franklin v. Whitfield, supra; Honea v. Blache, 469 So.2d 464 (La.App. 3 Cir.1985), and cases cited therein.
As we stated in Ford v. Patin, supra, at pages 1005 and 1006 (La.App. 3 Cir.1988):
"We agree that substandard work performance, standing alone, is not misconduct within the intendment of La.R.S. 23:1601(2). As stated by our brethren of the Fourth Circuit in Thomas v. Blache, 488 So.2d 1282 (La.App. 4th Cir.1986):
`The element of intentional wrongdoing must be present for an employee to be guilty of disqualifying misconduct. Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Banks [v. Administrator of Department of Employment Security] [393 So.2d 696 (La.1981)] supra. Unsatisfactory work, without the intent to do wrong, is not "misconduct" under LSA-R.S. 23:1601. Id.'
However, where an employee has the capability to satisfactorily perform the tasks for which he was hired, yet is guilty, despite repeated warnings both oral and written, of substandard work performance, such conduct evinces a willful and wanton disregard of his employer's interest and, in our view, constitutes misconduct within the purview of La.R.S. 23:1601(2). See January v. Administrator, Division of Employment Security, 155 So.2d 250 (La.App.3rd Cir.1963); Flagg v. State, Department of Employment Security, 494 So.2d 1305 (La.App. 2d Cir.1986)."
See also, Cole v. Doyal, 195 So.2d 759 (La.App. 3 Cir.1967); Batiste v. Brown, 134 So.2d 381 (La.App. 3 Cir.1961).
A review of the record herein, including a close review of the findings of fact of the Appeal Referee and the Board of Review, reveals that Stella Abotte did not use her best efforts at meeting her job responsibilities when for several years prior to her discharge she had exhibited an ability to meet the job responsibilities connected with her employment.
Abotte worked for Martin from July 9, 1980 until August 29, 1986. During her six years of employment with Martin she worked in the capacity of Sewing Department Examiner with the majority of that time being in the T-shirt Unit. It is noteworthy that the quality of Abotte's work was apparently more than adequate until the early part of 1986. The uncontradicted testimony of representatives of Martin shows that Abotte was capable of good *208 work and on many occasions, after counseling and retraining, her work improved. Even the Appeal Referee concluded in its findings of fact that Abotte "seemed to learn the acceptable way of inspecting T-shirts." The Appeal Referee further concluded that by August 16, 1986 the quality of Abotte's work was acceptable.
When one examines the particular job duties required of Abotte by Martin, it becomes obvious that this is not a case of an employee who has been overwhelmed with technical job requirements and responsibilities. The record reflects that Abotte's job responsibilities consisted of only visually inspecting garments for open seams, holes and other obvious defects and, where such defects were discovered, simply calling such problems to the attention of her supervisor. It is inconceivable that an employee who had performed a similar job in a capable manner for several years could suddenly become incapable of continuing to perform such duties. Despite the efforts of Martin, and despite the fact that Abotte had previously performed her job responsibilities over a number of years without incident, the quality of Abotte's work deteriorated until Martin had no choice but to terminate her employment. We find clear error in the administrative and trial court determinations that Abotte was not guilty of disqualifying misconduct. Abotte was capable of performing her assigned tasks and had successfully performed them for several years before her discharge. Despite Abotte's capability and repeated warnings, both written and oral, and despite several job retrainings, her job performance became and remained inefficient and substandard. In our view, such conduct is negligence of such degree in recurrence as to constitute a substantial disregard of the employer's interest, i.e., disqualifying misconduct.
For the foregoing reasons, the judgment of the district court in favor of defendants, Department of Employment Security and Stella Abotte, and against the plaintiff, Martin Mills, Inc., is reversed and set aside.
All costs of the trial and appellate proceedings are to be absorbed by the Clerk of this Court and the Clerk and Sheriff of the trial court. Melton v. State, Office of Employment Security, 473 So.2d 925 (La.App. 3 Cir.1985), and cases cited therein.
REVERSED AND RENDERED.
KNOLL, J., concurs and assigns written reasons.
KNOLL, Judge, concurring.
In reversing, the majority relies upon Ford v. Patin, 534 So.2d 1003 (La.App.3rd Cir.1988), a case in which I dissented, finding that the record did not support that the claimant was guilty of disqualifying misconductthe record failed to show that the claimant's misconduct was intentional or so gross as to constitute a substantial disregard of the employer's interest. Either standard must be met in denying a claimant unemployment compensation.
The evidence presented in the case sub judice which convinces me that the claimant was properly denied unemployment compensation benefits are the following: In a four month period directly preceding termination, Abotte received six written warnings, was conferenced five times about what she was doing incorrectly (including the review of videotapes of her inspection work for the purpose of constructively criticizing her performance), was suspended from work for a total of nine days, and received retraining twice (from April 29, 1986, to May 26, 1986, and then again from August 11, 1986, to August 22, 1986). Against this backdrop, I find that Abotte's conduct constituted negligence of such degree in recurrence as to constitute a substantial disregard of Martin Mill's interest, i.e., disqualifying conduct.
I find the case sub judice and Ford v. Patin, supra, distinguishable and, therefore, the Ford case should not be relied upon by the majority. Accordingly, I concur.